IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KURT LEWIS,
    Petitioner,

vs.                                              Case No. 4:06cv292/RH/EMT

WALTER A. McNEIL,[1]
    Respondent.
_____/

**ORDER, REPORT AND RECOMMENDATION**

        This cause is before the court on Petitioner's petition for writ of habeas corpus, filed under 28 U.S.C. § 2254, and supporting memorandum (Docs. 1, 2).  Respondent filed an answer to the petition and relevant portions of the state court record (Doc. 19).  Petitioner filed a reply (Doc. 20).

        The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.        BACKGROUND AND PROCEDURAL HISTORY

        The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 19, Exhibits).  On August 22, 2001, Petitioner pled no contest, pursuant to written plea agreements, to charges in two cases in the Circuit Court in and for Leon County, Florida, Case No. 01-865AF and Case No. 01-1711AF (Doc. 19, Ex. A at 50–51, 138–39).

---

[1] Walter A. McNeil succeeded James McDonough as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

Pursuant to the plea agreement in Case No. 01-865, Petitioner agreed to plead no contest to one count of resisting an officer with violence and two counts of battery on a law enforcement officer, each of which carried a maximum penalty of five (5) years, as well as one count of misdemeanor possession of cannabis, which carried a maximum penalty of one year in jail (*id.* at 50).  In accordance with the agreement, Petitioner was adjudicated guilty of the charges and sentenced on August 31, 2001, to three concurrent terms of two (2) years of community control on the felony counts and a consecutive term of 165 days of jail time on the misdemeanor count with pre-sentence jail credit of 165 days (*id.* at 54–66).  Pursuant to the plea agreement in Case No. 01-1711, Petitioner agreed to plead no contest to one count of false imprisonment, a felony which carried a maximum penalty of five (5) years, one count of violation of a domestic violence injunction, a misdemeanor which carried a maximum penalty of one year in jail, and one count of resisting an officer without violence, also a misdemeanor which carried a maximum penalty of one year in jail (*id.* at 138–39). In accordance with the agreement, Petitioner was adjudicated guilty of the charges and sentenced on August 31, 2001, to two (2) years of community control on the felony count, to run concurrently with the sentence imposed in Case No. 01-865, and a term of 109 days of jail time on the misdemeanor counts with pre-sentence jail credit of 109 days (*id.* at 140–52).

In 2002, Petitioner was arrested and charged with battery, resisting an officer without violence, and driving with a suspended or revoked license (Doc. 19, Ex. A(2)).  Additionally, a violator warrant was issued alleging Petitioner violated several conditions of his community control in Case Nos. 01-865 and 01-1711 (*id.*, Ex. A(1)).  On September 5, 2002, a violation hearing was held, and Petitioner was found to have violated the conditions of community control in both cases (*id.*, Ex. D).  Petitioner's supervision was revoked, and he was sentenced to consecutive terms of five (5) years of incarceration (*id.*, Exs. A(3), A(4)).

Petitioner appealed the judgment to the Florida First District Court of Appeals ("First DCA").  On November 5, 2003, the First DCA affirmed the judgment of conviction per curiam without written opinion, with the mandate issuing December 2, 2003 (Doc. 19, Ex. E).  <u>Lewis v. State</u>, 860 So. 2d 413 (Fla. 1st DCA Nov. 5, 2003) (Table).  Petitioner did not seek certiorari review by the Florida Supreme Court or the United States Supreme Court.

On October 27, 2004, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 19, Ex. F). The trial court held a limited evidentiary hearing on one of the claims (the claim which is the subject of the instant federal habeas action) (Doc. 2, Exs. B, C). The court then issued an order denying the motion (Doc. 19, Exs. G, L). Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion on February 9, 2006, with the mandate issuing April 7, 2006 (*id.*, Ex. O). Lewis v. State, 923 So. 2d 1167 (Fla. 1st DCA Feb. 9, 2006) (Table).

On June 14, 2006, Petitioner filed the instant habeas action (Doc. 1 at 6). Respondent concedes that the petition is timely and that Petitioner exhausted his state court remedies (Doc. 19 at 3–4).

II.   STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

---

[2]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* Panetti v. Quarterman, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claim.

III. PETITIONER'S CLAIM

Ground One:  "Trial counsel rendered ineffective assistanc [sic] of counsel by misadvising Petitioner the [sic] maximum sentenced [sic] allowed by law."

Petitioner contends he received ineffective assistance of counsel during plea discussions with the State prior to the revocation hearing.  He asserts that prior to hearing, defense counsel advised

him that the prosecutor offered five years, which counsel stated was the maximum sentence he could receive (Doc. 1 at 4). Petitioner states he told counsel he was not willing to take the maximum sentence (*id.*). He states that after the revocation hearing, the prosecutor sought consecutive five-year sentences, for a total term of ten years (*id.* at 4-A). Petitioner states if defense counsel had informed him that he could be sentenced to a total of ten years, he would have accepted the prosecutor's plea offer (*id.*).

    A.    Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697. Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied. Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is

"outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Additionally with regard to counsel's performance, the Eleventh Circuit has recognized a distinction between failure to inform and giving misinformation, and has noted that the failure to inform is less likely to constitute ineffective assistance of counsel. *See* Holmes v. United States, 876 F.2d 1545, 1552 n.8 (11th Cir. 1989) (citing Strader v. Garrison, 611 F.3d 61, 64–65 (4th Cir. 1979) (holding that misinformation of parole consequences is ineffective assistance of counsel)).

A petitioner satisfies the prejudice element if he establishes that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. In the context of a guilty plea, the prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985). To establish prejudice after the petitioner has rejected an offer to plead guilty, the petitioner must "establish a reasonable probability that, absent counsel's alleged ineffective assistance, he would have accepted the plea agreement." Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991) ("[A]fter the fact testimony concerning [the] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, [the defendant] would have accepted the plea offer."); *accord* Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995).

B.  Federal Review of State Court Decision

Petitioner raised this claim in his Rule 3.850 motion (Doc. 19, Ex. I). In the written order denying the claim, the state court made several factual findings, including that Petitioner's counsel for the revocation proceedings, Mr. Boothe, provided the following credible testimony at the evidentiary hearing on the post-conviction motion (*see* Doc. 19, Ex. L). Mr. Boothe strongly urged and even argued with Petitioner that he should take the prosecutor's plea offer of five-year concurrent sentences on Petitioner's three pending cases (the two revocation cases and the case involving the new charges) (*id.* at 2). Mr. Boothe explained to Petitioner that he could not overcome every alleged violation of his supervision, therefore, Petitioner should take the plea offer (*id.*). Mr. Boothe was well aware that Petitioner was facing a maximum sentence of five years on each case,

and he specifically told Petitioner he could get five years on each case (*id.*). Petitioner was unwilling to take any plea offer, regardless of its terms and the maximum sentence he was facing, because he thought he could "beat" the charges against him (*id.*).

The state court also addressed Petitioner's contention that a specific statement by Mr. Boothe at the revocation hearing evidenced counsel's lack of knowledge as to the maximum sentence that Petitioner could receive (*id.*). At the revocation hearing, Mr. Boothe stated that Petitioner had nothing to lose by proceeding with the hearing because the State was seeking the maximum sentence under the law (*id.*). The state court found that Mr. Boothe clarified this statement in his testimony at the post-conviction evidentiary hearing when he stated that by the time they proceeded to the revocation hearing, the plea offer of concurrent sentences had been withdrawn, and the prosecutor told him she would be seeking consecutive terms of five years on each case (*id.* at 2–3). Based upon these findings, the state court concluded that Petitioner failed to show he received ineffective assistance of counsel.

Initially, Petitioner has failed to demonstrate that the state court's decision was contrary to Strickland. Petitioner identified Strickland as the controlling law governing ineffective assistance of counsel claims in his Rule 3.850 motion, and his post-conviction counsel referred to the Strickland standard during his opening statement at the evidentiary hearing (*see* Doc. 19, Ex. I; Doc. 2, Ex. B at 10). Although the state court did not specifically cite to any United States Supreme Court case in its written order, a state court is not required to cite United States Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early, 537 U.S. at 8. In the instant case, the state court's reasoning did not contradict Strickland. The state court determined that Petitioner did not receive ineffective assistance of counsel because defense counsel told Petitioner he could get five years on each case, but Petitioner was not willing to take any plea offer, regardless of its terms and the maximum sentence he was facing, because he thought he could prevail at the hearing (Doc. 19, Ex. L at 2–3). This reasoning does not contradict the requirement that Petitioner show that counsel performed deficiently, that is, in a manner that no reasonable counsel would perform, and that Petitioner show a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different. Additionally, Petitioner has not shown that the state court reached an opposite

conclusion from the United States Supreme Court on a question of law, and Petitioner has not identified any United States Supreme Court case with a set of materially indistinguishable facts that was decided differently from his case, nor is the court aware of any such case. Therefore, Petitioner has failed to show that the state court's decision was contrary to Supreme Court law.

Additionally, Petitioner has failed to demonstrate that the state court's decision was based upon an unreasonable determination of the facts. The state court's factual findings are amply supported by the record. At the post-conviction evidentiary hearing, Petitioner testified that he was 34 years old and, with regard to his education, he had a GED and attended one semester of community college (Doc. 2, Ex. B at 14). He testified that Mr. Boothe was representing him on both of the revocation cases as well as the new case, Case No. 02-2718 (*id.* at 12). Petitioner testified that Mr. Boothe discussed his revocation case with him at the local jail on the day before the revocation hearing (*id.*). Petitioner testified that Mr. Boothe told him that he was charged with fourteen violations of supervision, but he (Boothe) believed he could prevail on all but three of them, namely, two violations for driving with a suspended license and one violation for a "dirty urine" (*id.* at 13–14). Petitioner stated that despite counsel's telling him that he could not succeed on all of the violation charges, Petitioner did not understand that this meant his supervision could be revoked (*id.* at 13–14). Petitioner testified that prior to the date of the revocation hearing, Mr. Boothe never discussed with him the maximum sentence he was facing for the three cases (*id.* at 15). He stated that on the day of the hearing, Mr. Boothe told him that the prosecutor, Kathy Ray, offered to give him five years (*id.*). Petitioner testified that Mr. Boothe told him that the offer was not a "deal" because that was his maximum sentence, and Petitioner understood this to mean that five years was his maximum sentence for all three cases (*id.*). Petitioner further testified that he did not know that he was facing a possible maximum sentence of ten years (*id.*). Petitioner testified that if he had known that he could have been sentenced to ten years on the revocation cases, he would not have rejected the State's plea offer of five years for all three cases (*id.* at 19).

On cross-examination, Petitioner admitted that he lied to the court under oath during his testimony at the revocation hearing on September 5, 2002, regarding whether he pleaded no contest to charges of driving without a valid license, whether he signed the judgments related to those

charges, and whether he admitted to a probation officer that he smoked cannabis (*id.* at 21–23; *see also* Doc. 19, Ex. D at 70–84).

Mr. Boothe testified that he had been practicing law in the area of criminal defense for fourteen (14) years (Doc. 2, Ex. B at 30–31).  He testified that he told Petitioner he did not believe there was anything he could do to prevent revocation of Petitioner's supervision because at least three of the alleged violations were easily provable (*id.* at 33–34).  He further testified that on the day of the revocation hearing, the prosecutor offered a five-year concurrent sentence on all counts in all three of Petitioner's cases (*id.* at 34–35).  Mr. Boothe testified that Petitioner would not accept the offer because he believed he would prevail at the revocation hearing because one of the alleged violations was that he committed a battery against his wife, and he did not believe she would testify against him (*id.* at 35, 37).  Mr. Boothe testified that Petitioner's assertion that he (Boothe) advised Petitioner not to take the plea offer was "absolutely positively untrue," and that he "did everything I could within my power to get him, to convince him to accept that plea offer . . ." (*id.* at 35–38, 57). Mr. Boothe further testified that he never advised Petitioner that he could not receive more than five years for his cases (*id.* at 37–38).  He stated he told Petitioner he could receive five years on each case (*id.* at 38).  Mr. Boothe testified that when Petitioner rejected the plea offer, the prosecutor withdrew her plea offer and offered consecutive terms of five years on each case, so Petitioner was facing the maximum sentence when the revocation hearing began (*id.*).

On cross-examination, Mr. Boothe was questioned about a comment he made to the court during the revocation hearing:

> Q.      . . . isn't it true, sir that you told the Court that a five-year maximum sentence, Miss Ray's offer is five years.  So we have nothing to lose to come and waste the Court's time because we are being offered nothing but the maximum sentence under the law.  Isn't that true?
>
> A.      That is exactly what I said in that context, and that is exactly what the truth was.  Because she withdrew her previous offer of five years concurrent and offered us five years consecutive.  Obviously I'm not very artful in what I said but it was five years maximum consecutive. The offer was five years consecutive when she withdrew the offer so now we have to go to the hearing.
> . . . .
> Q.      But the fact of the matter is that statement by you, that you claim now was misspeaking, it was not artfully said, was incorrect?

> A.   I'm not willing to necessarily concede that.
>
> Q.   Well, by going to this hearing and not taking the plea, all right, he had a lot to lose. In fact, he got a harsher sentence of five more years. Isn't that true?
>
> THE COURT:  A harsher sentence than what?
>
> MR. COLLINS [Petitioner's post-conviction counsel]:  Than the plea offer.
>
> . . . .
>
> Q. [by Mr. Collins].   . . . What did you mean by that last statement that you just admitted to other than you had nothing to lose? Five is the most that I could get, so what the heck?
>
> A.   At the time when Mr. Lewis refused the plea offer and we went to hearing, it is my recollection Miss Ray said, fine, five years consecutive on each is what you are going to get, or something like that. And so I said—I left out the word consecutive. A five-year maximum sentence consecutive, Miss Ray's offer is five years consecutive.
>
> So we have nothing to lose to come forward and waste the Court's time. I'm trying to tell the Court—to come forward on 14 allegations, the Court sometimes is not very happy to waste its time on cases that should not be argued before it that are obvious in what the outcome is going to be.
>
> So I am trying to help my client, saying, Judge, we are not trying to waste the Court's time. By the time we got here and this hearing started, she is offering us five and five consecutive, so we got nothing to lose. Now, I didn't say consecutive and I didn't say that. And that is the best of my recollection. Could I be wrong? Absolutely.

(*id.* at 40–43). Mr. Boothe further testified that he knew that the maximum sentence Petitioner could receive was five years on each case (*id.* at 44). Mr. Boothe denied that he told Petitioner the maximum sentence he could receive was a total of five years (*id.* at 51).

On re-direct, Mr. Boothe testified that Petitioner told him that the reason he was rejecting the offer of five years concurrent was that five years was "too much time," and his wife was not going to testify regarding the domestic battery charge (*id.*). Mr. Boothe also testified that Petitioner filed a complaint against him with The Florida Bar, and one of Petitioner's allegations was that he (Boothe) forced Petitioner's wife to testify against him, which was not true (*id.* at 55). Upon

questioning by the court, Mr. Boothe reiterated that he did not advise Petitioner that the maximum lawful sentence he could receive for the three cases was five years total (*id.* at 58).

The evidentiary hearing continued two days later. At that time Kathryn Ray, the prosecutor during Petitioner's revocation hearing, testified that prior to the revocation hearing, she offered Petitioner concurrent terms of five years on the three cases that were then pending (Doc. 1, Ex. C at 5). She also testified that she told Mr. Boothe that if Petitioner proceeded to a hearing, she would be seeking five-year consecutive terms on each case (*id.* at 6).

Although Petitioner disagrees with the state court's determination that Mr. Boothe knew that Petitioner faced a maximum sentence of consecutive five-year terms and communicated that information to Petitioner during plea negotiations (*see* Doc. 2 at 3–6), he has failed to present clear and convincing evidence that the trial court improperly credited the testimony of Petitioner's counsel instead of Petitioner's testimony. Furthermore, although Petitioner makes much of defense counsel's statement at the revocation hearing that Petitioner had nothing to lose by proceeding to a hearing because the prosecutor was offering nothing less that the maximum sentence (*see* Doc. 20 at 2–5), the state court accepted as credible Mr. Boothe's clarification of his statement as meaning that by the time the case went to hearing, the offer of concurrent terms was off the table, and the prosecutor told him she would be seeking consecutive terms of five years on each case. Petitioner has failed to demonstrate that the state court's acceptance of this explanation was unreasonable. Therefore, Petitioner has failed to show that the state court's decision was based upon an unreasonable determination of the facts.

Additionally, in light of the court's factual findings, the state court's denial of Petitioner's claims was not an unreasonable application of <u>Strickland</u>. Petitioner failed to demonstrate that defense counsel performed deficiently during the pre-trial plea discussions. Defense counsel knew that Petitioner was facing a maximum sentence of five years on each case, and he specifically told Petitioner he could get five years on each case (*id.*).[3] Counsel strongly urged Petitioner to take the

---

[3]Additional record support for the fact that Mr. Boothe told Petitioner prior to the revocation hearing that his sentence exposure was five years on each case is a letter from Mr. Boothe to Petitioner dated just two months after the revocation hearing in which Mr. Boothe states, "It seems you conveniently remember what you want to remember. I told you there was very little differences between the bottom of the guidelines (34 months) ans what the State was asking (5 years) however I told you that you were exposed to (5 years) [sic] on each case if the Judge decided to sentence you

plea offer of five-year concurrent sentences on Petitioner's three pending cases. Counsel explained to Petitioner that he could not overcome every alleged violation of his supervision, therefore, he should take the plea offer. Petitioner was unwilling to take any plea offer, regardless of its terms and the maximum sentence he was facing, because he thought he could prevail at the hearing. Therefore, the state court did not unreasonably apply the Strickland standard in denying Petitioner's claim. Accordingly, Petitioner has failed to demonstrate that he is entitled to federal habeas relief.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Walter McNeil is substituted for James McDonough as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 17th day of April 2009.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**

---

that way. I also told you that **we would lose** at the hearing." (Doc. 19, Ex. N) (emphasis is original).

Case No. 4:06cv292/RH/EMT